22-3176 and 22-3666 Electric Power Supply v. FEDERAL ENERGY REGULATORY COMMISSION 22-3794 and 22-3796 PJM Power Providers v. FEDERAL ENERGY REGULATORY COMMISSION ORAL ARGUMENT NOT TO EXCEED 15 MINUTES FOR PETITIONERS, 12 MINUTES FOR RESPONDENT AND 3 MINUTES FOR INTERVENERS Mr. Hughes, for the Petitioners, you may proceed. Good morning, Your Honor. May it please the Court, I'm Paul Hughes for Petitioners, the Electric Power Supply Association, the PJM Power Providers Group. I'd like five minutes for rebuttal, if I may. We advance two principal positions. First, that FERC's decision was the product of an Ultravarious Act. And second, that FERC acted arbitrarily and capriciously in any event, because FERC failed to consider its precedent regarding regulatory stability and its departure from prior orders fails the governing FOX standard. Now, I'm happy to start anywhere the Court would like, but... Well, could I? Please. Maybe you shouldn't have said that, but I probably would have done this anyway. Tell me, let's say you're right on the statute in this first argument about the Chairman's powers. I'm trying to figure out, if you're right, what happens. I mean, you must acknowledge it's an odd situation, and I'm not sure whether it's harmless air or how to think about it, but it does seem to me possible that you could be right about the statute, but that it not be obvious why that changes anything. And I'm just curious your take on that. So, what's the remedy if the Court agrees with us, is how I might put that. So, I think the remedy is clearly vacater, and I have a few reasons for that. The first, there are two easy ones, and then I'll get to the substantive. The two easy points is, first, I don't think FERC in their brief disagrees with our presentation that vacater is the right remedy. They certainly disagree with us on the merits of the statutory question, but if we're right, we've advanced all along that vacater of the underlying decision is warranted, and I don't think FERC really disputes that. The second easy one... But, I mean, the commission's changed, and so what... The notion of harmless air is agreement there's air, but that it's not going to ultimately change anything. And it's true, vacater does do some change, but it changes you in a path where it doesn't seem like it ultimately leads to any change in what's going to happen here. I think what it would do, Your Honor, is essentially vacate FERC's underlying decision, which led to the remand. What that would do is we'd be back to a status quo ante situation, where if the court were to agree with that, the D.C. Circuit case, which is still currently held in abeyance, would actually spring back because the underlying orders would be effective. And importantly, that case is currently held in abeyance because the petitioners, who are largely the interveners here, and FERC have told the D.C. Circuit that case needs to wait, this court's ruling, because if this court were to vacate, that that case that is challenging... So we then have arbitrary and capricious review in the D.C. Circuit as opposed to here about the same underlying position? Well, what would happen, Your Honor, is I think what would become the effective order would be the original 2020 ORDC decision, which is what is currently on review in the D.C. Circuit. So if the court were to vacate the final action of FERC that is challenged here, I think that would set aside what has happened following the remand order. The net result of that would be a return, again, to the status quo ante, the lawful act was the 2020 FERC ORDC decision, which is what is currently pending review in the D.C. Circuit. And again, the parties to that proceeding have told the D.C. Circuit to hold an abeyance, specifically contemplating that if we're right and this court vacates, those orders become effective, which would then trigger the right for review of the petitioners in that case. And let me add, though, as to why... I'm sorry, I just need a point of clarification. So I thought that the orders went to the D.C. Circuit, then they were voluntarily remanded, then the commission reconsidered, now we're reviewing those actions. But you're saying there's still some live action, some order that's still before the D.C. Circuit? So, Your Honor, on that voluntary remand, that did not dismiss the docket in the D.C. Circuit, so that was voluntarily remanded to FERC. FERC then proceeded to issue the orders that it did. They're under review in this court. But the D.C. Circuit's docket was not dismissed. That was held in abeyance. Dockets get dismissed? Well, Your Honor, that... You're just saying there's a case number still waiting for something still to happen? It's not actually a case. Well, the D.C. Circuit ordered an abeyance of that proceeding. You may well be right, Your Honor, that there's not officially a case, but... But I think Judge Larson's trying to pursue the same line of questioning. It still went back to the commission. They still did something. And that something... Are you telling me that something's going to look different from the thing we have in the second part of this case? Yes, Your Honor, because if we're right that this decision is vacated, I believe that the net result would be a return to the prior FERC decision. So we would vacate this new order, the new order, the one that we're reviewing now? Yes, Your Honor. We would vacate that order, and your position is not that the FERC could then reconsider and put out exactly the same order they've already put out, but that the prior order would spring back into life. And that one wouldn't be...would then be reviewed in the D.C. Circuit? Yes, Your Honor, that is... No, you mean that? I mean, it's not been mooted by later action? Well, so, again, whether or not I think there is review of that order might be something that would be a separate question, but I think the underlying mechanics of what would happen if we get vacater, I don't think it is simply a remand for FERC to reconsider in these circumstances, because going... So tell me why it wouldn't...what's the reason... the order that's now in front of us, the second part of the case, what's the reason why that wouldn't be reinstated? What's the explanation why that wouldn't happen? So the underlying argument on point one of our contention is that the remand was an unlawful action because it was a statute. We got that? Right. And so if the court sets aside FERC's action that caused the remand and the return of jurisdiction back to FERC, what that does, setting aside that action, is the last lawful act that's unchallenged here prior to that is the final determination of FERC in 2020 that led to the ORDC orders. Those orders would be effective at that point because that would be the effect of setting aside the FERC actions that have occurred subsequent to them, which is where the unlawful activity occurred. But isn't the ordinary remedy in a case where we review agency action that we vacate the underlying order and remand to the agency? So I just don't know why the agency can't just then say, like, great, you vacated this order, here's a new order. It looks exactly like the first one. Or this time they have a quorum. To say, please send it back. And then they march down the road that we already know. So, Your Honor, I think if that was the conclusion the court were to reach, and I think this is what the court was suggesting, that would have, I think, a pretty pernicious effect of insulating the underlying FERC error from any sort of judicial review. Well, it's possible that it's not that big an error. So I'll tell you what I think the chairman could have done, and I can't believe didn't do, was simply say, don't have a quorum, not sure what's going to happen, I speak only for myself, but let me tell you something, D.C. Circuit. We have new commissioners. It is possible the new commission will think differently about that order. It's up to you whether you want to remand. That would not have been a problem. That would have been just an informative, administrative piece of information to the D.C. Circuit to consider. And then we all know what would have happened. The same thing would have happened, because courts of appeals don't like to decide questions they don't have to decide. And if it's possible the commission was going to change, I can almost guarantee you that's what they would have done. And that would not have violated anything, because that's just the chairman letting someone know something, not on behalf of the commission, but as the chairman, and letting the court decide what to do with it, as opposed to acting as if it was the commission. In other words, I'm dignifying your main argument, but the idea of, oh, we're insulating something, I don't think you're insulating a lot. This was just a silly footfall, if you ask me. Well, a few things are wrong. I think that's a complex hypothetical, and we'd have to think through how that would come out. What's complex about it? You don't think the chairman has authority just to let someone know that they're new commissioners? I think the concern about the chair's action here is what the chair did was a FERC order that was otherwise final, it was, of course, pending judicial review, but FERC had lost the power to do anything on that, took affirmative action, putatively in the name of the commission, but without commission action, to preclude... Yes, yes, yes, yes, yes. But why would it be problematic for the chairman to confirm something that's in the news and just let the court know something? I mean, can you not let them know supplemental authority? You have to have the quorum to say, by the way, you should know we have new commissioners? I don't think, Your Honor, that the D.C. Circuit necessarily would have remanded sua sponte absent the affirmative request that was framed as a request from the commission to go back and reconsider. But, again, if Your Honor is correct, and, of course, may well be, I think that suggests why recognizing they are here and setting the guideposts around the distinction of authority between FERC chair and the commission is really quite important and why what is a pretty distinct error here, I don't think, should be counted in this case and found in some ways to be harmless when we know that it was merged into FERC's final decision. FERC still, to this day, in its rehearing decision, characterizes this. This is at Joint Appendix 1053, paragraph 104 of the rehearing petition, as it says, The commission filed its unopposed motion for voluntary remand of the record to allow further reconsideration. And our fundamental point is it was not action of the commission. I understand that, but here's what I want to know. Surely there are motions that the commissioner, the chair, can direct to be filed, and the commission doesn't have to vote on every litigating paper, right? So you will file a motion for extension of time. Surely, right? So why is this? What makes this one different? What if the commission took a position here? What if the commission came in and said, Hey, we know we're a multi-member commission, but we kind of think we're unconstitutional, like we don't really believe this fourth branch of government thing. And the commission's like, wait, what are you talking about? We believe Humphrey's executor, you're speaking ultraviolence. But they filed that in a brief in this court. Do we have to say, like, point heading one says FERC unconstitutional. Did you get the vote of all the members? Like, surely not, right? Why isn't it just apparent authority that we get to rely on what they represent as being the position of the commission? So let me address, I think, two important questions there. One, does this court have to flyspeck everything FERC files? Absolutely not. The second is, how do we distinguish between the things that do and don't? So on the first, there is a presumption of agency regularity when FERC files something in court that says this is the action of FERC. I think it is reason to assume it is, in fact, the action of FERC. We are here because we have an extraordinary circumstance where there was a filing that said this is the action of FERC, and it was only through the dissent of Commissioner Danley that we later came to learn it was not the action of FERC, but a unilateral. So I think this is an exceptional case. But the same thing could be true here. Like, the same thing could be true here. We could find out, oh, actually the commission does think it's constitutional. Surprise, surprise. Again, I think it's going to be an extraordinary case, not the ordinary case, in which FERC is doing something, and this moves immediately to the related question of what's the distinguishing point. But when this sort of circumstance arises, and I think if this court provides guidance as to that division, I don't think we would see it prospectively. But again, that's what makes this case extraordinary, because it was not known at the time of the remand request that that was not something that spoke for FERC as a body, but rather spoke for the chair uniquely. But I think the critical question you're asking is how do we tell between when something is substantive policymaking, which is where I think it clearly has to be done by FERC, and something by contrast, which is day-to-day administration and management of personnel, which is in the chair's authority. Now, I think that that broad test between substantive policymaking and day-to-day administration, that comes from the statutory text from precedent. There's an OLC opinion that Commissioner Danley cites from 2000 that I think is quite instructive about the Chemical Safety and Hazard Investigation Board that has a similar statutory structure. He cites that at Joint Appendix 923 footnote 7 of that OLC opinion. And what OLC says is on the one hand you have quote-unquote day-to-day administration, and on the other hand you have substantive policymaking and regulatory authority. So those are the broad buckets. How does that apply here? I'd say there are two different ways to think about how that applies here. One, if what FERC is doing is changing the legal authority or the legal position of FERC, that has to fall within the substantive policymaking or regulatory authority. That's what happened here because before the remand motion, FERC simply did not have lawful authority to go back and reconsider the decision. Because jurisdiction had left FERC, FERC was done. FERC's decision for its purposes was final. It lacked power. Doing the remand is what directly changed its position. Does it vacate the order of the commission when you voluntarily remand? Does it vacate that underlying order? No. This was a remand without vacater, Your Honor, so it did not vacate the underlying order.  So all it was doing is saying, hey, give us a little more time. So the commissioner goes and he says, hey, D.C. Circuit, we'd like to rethink this a little bit. Nothing compelled the commission to change its mind. I know there was a change of personnel, but technically they're still the same commission. So if they had asked for a voluntary remand to just flyspeck one little corner of their order, you wouldn't be here today. And, Your Honor, I think it goes to this point that, first, it changes the legal position. I think that's the narrower rule. I think under any reasonable interpretation, that's going to be substantive policymaking, regulatory authority, because, again, before the chair did this, You would say it doesn't matter what you're going to do on remand. Every request for a remand is a substantive choice. You would just say that's a clear line. Yes, Your Honor. If jurisdiction has left FERC and then... But it does seem so technical that you could do this really identical thing and not call it a motion to remand, but a notice of new authority. Notice of there's been an intervening decision. Notice. Notice a new commission. The D.C. Circuit may wish to remand, not a request, not a motion, because I have a very strong instinct that that's okay. That seems quite administrative. It's not acting on behalf of the commission there. You're letting them know something truthfully that happened, and you're not saying the commission wants you to do anything. All it wants is for you to have the information. It just seems so technical that one is okay as I see it and the other is not. For what it's worth, I'm inclined to agree with you about this line, but this still seems funny to me. Let me explain, Your Honor, why I don't think that technical distinction is something that's meaningless, because it has a massive effect on the parties. Here, what transpired, and the record reflects this, is FERC represented to the parties that the commission, as the commission, was seeking a remand, and that's what it told the court. Now, I think that's an extraordinary circumstance, and to clear up, I think, some confusion with my friend here, we're not saying FERC lacks somehow the authority, if FERC is acting as FERC, to request this. The problem here was no one knew at the time that this was done, that this was a unilateral act of the commissioner that didn't have the full support, was not something that had been taken to FERC. It's just a question-begging point. I mean, I love the phrase unilateral action. It kind of goes like, oh, my gosh. But it begs the question what he unilaterally did. It doesn't help you. You've got to go with the line. Again, considering the counterfactual, as Your Honor posits, which is Chair Glick, instead of filing a motion that purports to be on behalf of the commission, instead files just a supplemental authority, a notice. A supplemental authority. A notice saying the commission has changed. The court may wish to respond to remand so we can reconsider. I, again, you know, this is counterfactual, but I think it's very likely that some of the parties in that proceeding at that time would have opposed, would have shown up and said, look, this is not something that reflects a position of the commission. This is something that reflects. It skews the adversarial process, I see. Okay. That's a fair point. Because, Your Honor, when something is reflected as the action of the commission, that I think is a very, from a party perspective, a very different thing than a commissioner saying I, as the chair, am going to inform the court that this is an action you could take, but I'm not requesting it because I'm not the party to this case. I guess that leads to the next question, though. Could the chairman have said on behalf of the commission and not indicated it's only in his, it's only him, could he have simply said something on behalf of the commission, notice of supplemental authority from the commission? So I think that is closer to the line that I was discussing, but I still think that is potentially problematic, because where I think ultimately that one way as a practical matter to think of the dividing line between what FERC as a body can do and what the chair can do, one aspect of the policymaking authority must be the related authority to effectuate that, just like a part of the court's authority to issue orders is the related authority to be able to effectuate those orders. Actions that are taken that have a purpose to obstruct the effectuation of an order necessarily are part of that same policymaking apparatus, policymaking authority, and cannot be considered ministerial day-to-day action. And again, I don't think my colleagues at FERC disagree with this. In their brief, they say that if the FERC chair directed the solicitor's office to advance the position of a dissent, something like your Honor's suggestion, they agree that that would not be something the chair could lawfully do absent a commission vote. And so the question is, well, why is that? Because that kind of thing. I think this has been really helpful, but maybe I'd love to see you tell us your best arbitrary and capricious argument on the second point, since we're like ten minutes past the red light. So just maybe five minutes on that, and then we'll start here from the other side. Thank you for your indulgence, Your Honor. And I'm happy to move to any, but where I'd suggest the court start is the importance of regulatory stability. This is an argument that we very squarely advanced in the rehearing petition. It was the first thing that we said, the first issue that needed to be addressed. We cited FERC precedent, the rail splitter case, the Duke Energy and Trading, which explains that regulatory stability, independent of any sort of individual party reliance, but regulatory stability because these energy markets are so big and so important, has independent, unique value. And Fox, what do you say about Fox in relation to this argument? So what Fox would say is when this argument is presented, FERC has to identify the argument and then give some kind of material response to it. FERC, they acknowledge that we make the argument, but they don't remotely begin to address this on the substance. They point to passages of J1053 and 54 that are about the prior issue we were talking about. FERC engaged with this prior statutory issue, but they say nothing about regulatory stability. Now, in its brief, FERC tries to distinguish its own precedent in saying how they might not be directly applicable. Again, we disagree with that. We can talk about that. But the main point is FERC itself never even wrestled with this argument. It's a straightforward Fox point that previously they had come out to one particular conclusion. Then they 180 degrees reverse course. And this is an internal FERC precedent-based stabilizing canon that exists given the importance of these markets. When this is invoked, FERC has to at least respond. Now, maybe they think that the importance of regulatory stability is overcome for some particular reason here, or that precedent is distinguishable, or they want to part from it. What if they think the challenge decision was what was unstable? Your Honor, they could have addressed regulatory stability and said, here's the reason why. We recognize a regulatory stability precedent, and either we disagree with that precedent, or it doesn't apply in the circumstance, or it's overcome by the case-specific factors, as the Court suggests. The basic point here is they did none of that. They simply did not respond to their own precedent on regulatory stability. And I think this case is sort of a pretty good example of why that internal FERC stabilizing canon exists. It's a notion that you don't want to have rapid swings back and forth in FERC policy with the view that one commissioner changes, and all of a sudden we're taking a hard turn in terms of what the regulatory policy is going to be. So, again, this was an argument that was plainly put before them. It is in their precedent, and FERC has an obligation to review that. I'll also be happy to talk about the market issues and the market distortion, but I know the Court's given me quite a bit of time. Why don't we preserve our flexibility, both on rebuttal and with the other side, and let's start to hear from them, and we'll decide then what to do. Thanks very much for your opening argument. Mr. Fish, are you starting out here? Yes. Okay. Mr. Chief Judge, and may it please the Court, Jared Fish for the Federal Energy Regulatory Commission. My colleague on the other side said that the 2021 remand motion was a substantive policy-making decision. I think this gets to your point, Judge Larson, and also to your point, Judge Sutton. It was not. All the remand motion did was expand the Commission's jurisdiction and discretion to make a new decision by a majority vote on remand. Now, under the DOE Act, the Department of Energy Organization Act, Section 7171C, the Chairman must act unilaterally. When he acts unilaterally, he must act on behalf of the Commission. It is by definition acting on behalf of the Commission when the Chairman seeks to increase the Commission's power. That's exactly what he did here by seeking remand. Petitioners conflate what the Chairman did, which was to expand the Commission's jurisdiction and take the record back, with making a new policy decision as was issued through the 2021 voluntary remand order. Those two things are separate. The Commission, by majority vote, could have left the 2020 orders as they were. I must say, it leaves a pretty bad taste in my mouth what happened here. Now, I don't know if this was negligence or malevolent, but it just leaves a bad taste in my mouth that on behalf of the Commission, please send it back to us. That says, communicates something that, in my view, was a lie. And what I don't understand, and this is why I'm more inclined to think it was negligence, why he wouldn't just let the court know something that courts like to know, that it's possible the new Commission will have a different view on this. But this was a motion to do something, and the motion to do something comes with it, the idea we'd like this back. And that is undoing the prior decision, and he did not have that authority. No, Your Honor, so three... Recalling and expanding his authority, I have to say, is a little bit of a lawyer's game to me. You can say that any which way. The short answer is he's undermining what the Commission as a body had done in its majority capacity, and is the lead dissenter saying, oh, I'm going to use this great position as chair to do something I just don't think the prior majority would have allowed. And I don't think anyone could have objected had he just taken the other path of saying notice of information. That probably would not be something that was substantive. Your Honor, the chairman speaks through the Commission's attorneys, and when he acts, when he instructs unilaterally the Commission's attorneys to do something, those attorneys, us, are representing the Commission by definition. I don't know that the chairman could unilaterally file a motion with the court saying here's supplemental authority. The question is when... No, no, no, I asked you to do it. That's what I meant. That's implied in what I'm saying. I'm not sure I know what you mean by this, because you obviously couldn't have done this on your own. Right. Okay, so if you couldn't do it on your own, why could he do it on his own? Because the remand motion does not... You're agents for the Commission. Right. He is an agent for the Commission in his capacity as chairman, which means the principal is the Commission. The principal is the Commission, but the DOE Act says that the chairman can unilaterally act in certain ways, including through his executive authority. Right, employment and administrative. And all of the spelled out examples don't remotely cover this. As a practical matter, I'm willing to agree a notice of supplemental authority counts because it's just not substantive. I don't understand how it's not substantive to say send it back to us. Well, I suppose he could have done that through first attorneys, but the question for whether the motion needed to be subject to a majority vote is determined by whether it falls within the definition of action of the Commission under Section 7171E, and it does not. Judge Larson, I think you were getting at this. Petitioners offer no definition of action of the Commission. Their definition is limitless, and there is no rational basis. I think they're saying substantive, and I'm not sure you can do better than that. But the remand motion by definition was not substantive. It made no policy. What do you mean by definition? Because all it asked the court to do was to send the record back. That was not a substantive decision of the agency to do something. The first time the agency did anything substantive on remand was when it issued by majority vote the 2021 remand order. I'm sorry, one last question. How is it not substantive to create a situation where you have zero authority and then you have complete authority? That sounds to me like the epitome of substantive. Without the remand motion, zero authority. With it, complete authority. And you're calling that not substantive. Well, the Commission had full authority on remand to do something.  Right. Without it, zero authority because it's in front of the D.C. Circuit. How can you possibly say that's not substantive? It's not substantive in that it doesn't fall within the definition of action of the Commission. They don't offer a definition of action of the Commission. This is your APA argument, but go for it. Judge Larson has a question. You know, I'm just concerned about if anybody, what Judge Sutton just said is, you know, the Commissioner lied to the D.C. Circuit. I strongly push back. I know you don't agree with that, but that's the concern here. But if that's true, like the D.C. Circuit was lied to, and then let's say that's true, and they issued an order. Are we supposed to, like, it seems to me we have to call into question the order of the D.C. Circuit here. And last I knew, we didn't sit in review of their order. So is that a problem here, or is that not a problem here? Well, I'd say it is a problem in two different ways. First, if this Court were to vacate the orders on remand, then I think this Court would be collaterally attacking a final order of the D.C. Circuit. And that's problematic, not just because that order is long since final, but also I look for a case where, you know, a court had overturned a final order of another court. Can I just pause on that one? I'm sorry to interrupt, but I just want to just, I do think this is a really tricky point. Why isn't the answer, and I know you don't accept the beginning of what I'm saying, so just accept it for now as hypothetically. We say it's problematic, what the Chairman did. I know you disagree. I don't think we have authority to tell the D.C. Circuit what to do. We say from our perspective it's harmless, but we now have an order, and I suppose the D.C. Circuit can do what it wishes with it. So in other words, well, the point is it's harmless from our perspective, because I don't know what we can do. So harmlessness ought to be a word you like hearing in this case, but that doesn't mean the D.C. Circuit can't do what it wishes with our decision. I mean, it's possible, of course, they don't even agree with the decision, and they're not bound by it, so that could affect things. But I suppose that's my one way of thinking about what Judge Larson is saying. We don't have authority to vacate D.C. Circuit orders. We do have authority to do what's in front of us. From our perspective, it seems harmless, but I suppose they can do what they wish with this situation. Right. However, I think that this Court would necessarily be calling into question the final order of the D.C. Circuit, which determined that the Commission could conduct the proceeding on remand, and this Court would be finding that, no, the Commission actually could not. But if I could just, because this is really important from an institutional perspective, the Chairman did not lie to the D.C. Circuit. The question here is whether the Chairman had the unilateral authority to direct the Commission's attorneys to file this motion. No lies. No lies, just exercising unilateral authority he didn't have. And we'll call it a close call. We'll call it a close call, but one we don't agree with. Well, unilateral authority he didn't have only if the motion needed to be voted on by the majority of the Commission. And if action of the Commission really means filing a litigation motion that could have substantive effects down the road, then there's no limit to what that means. It could be filing a motion, as Judge Larson, you pointed out, to set a briefing schedule or to file. No, no, no. The problem in this one is it signals a majority wants it back. That's what it signaled. And that part of it, you're going to have to be a really good lawyer to convince me it doesn't send that signal. Well, I don't think it does because of the provision. The motion to remand by Commission does not mean a majority wants it back? No, not necessarily. If you look at Section 7171G of the DOE Act. Well, we're not busy. We want something more to do. If I could just. It says that the Commission makes decisions. And when the Commission makes decisions, it can be through as few as one Commissioner. The fact that the Commission is submitting something does not necessarily mean it's been subject to a majority vote of all the Commissioners. That comes straight from the statutory text. And it's bolstered by the fact that Section 7171I gives the Chairman specific unilateral authority with respect to litigation actions. It provides that the Chairman unilaterally designates attorneys who may appear in court to defend the Commission, may appear. That's discretionary, which means that. Did you confess error? I was going to ask that question. No, that's great. I was going to ask that question. Everything's the same except it's just a confession of error on the original order. It's not by the Chairman. It's by the Commission. It's through the Commission's lawyers. And it just says we botched it. Well, not necessarily. We made a mistake and we'd like to look at it again. That's what it says. We'd like to look at it again, but if I could pose a hypothetical. What's the answer to we made a mistake and we'd like to look at it again? Is that okay by the Chairman alone? Well, I would say what the remand motion said was we'd like to look at it again. No, no, no, please. You know the rules. It's a hypothetical. It doesn't bind you because it's not what happened. What's the answer to the hypothetical? The Chairman files on behalf of the Commission, does not signal it's only his view. We made a mistake. We'd like you to remand it. Yeah, that's in some ways what happens here. The motion didn't actually say we would. No, is that okay? Could the Chairman do that by himself? In a brief. So the brief to this Court says we were wrong, we confess error, but the Commission isn't behind that. It's just the Chair. He says, lawyer, confess error. No, no, we could not do that, and here's why. This is really important. The Chairman, under Section 7171C, acts on behalf of the Commission. When the Commission issues an order, that is the Commission's statement. So the Chairman could not direct us, the Commission's attorneys, to defend the petitioner's point of view or the dissenting point of view or to say that what the majority did was an error. That's the Public Service Commission of New York case, and really importantly in that case, so that was all about whether Commissioners could seek to retroactively change their votes on a prior order without the full Commission voting on a new order, changing that order, and the Court said no. No, go ahead. The Court did say at page 778 that it's fine for an individual Commissioner to endeavor to change an order. It's just that to do that act requires a majority vote. So we all agree, I think as we should, that you can't unilaterally confess error. That would blow the whole thing up. What's your best case that you can do something that I have to say implies that or at least implies a desire to reconsider? What's your best case? You don't need to tell me the facts. Just tell me the case where the Commissioner can unilaterally say to a Court, please remand it so the Commission can look at this again. So it's unilateral, no vote, no confession of error, so that makes it harder or whatever better. I don't care, but what's your best case on that one? Well, this is a somewhat sui generis instance in which this hasn't, well, at least we don't know that it's happened before, but I would say it's relevant that the D.C. Circuit has never inquired into the provenance of any remand motion or the other circuits that have considered remand motions. It's always been assumed that if the motion is filed on behalf of the Commission, then the Court will send it back so that the full Commission can issue a final say that comports with its current composition. Here's the question I want to ask. What I'm worried about is from our perspective, for the Court, when the lawyers stand up here and they say, we represent the views of the Commission, I'm not sure that we want to be asking every time, do you have a quorum? Did you have a majority vote? If you got up here and confessed error, are we going to have to ask that question? If you get up here and you ask for a voluntary remand, do we have to ask that question? If you take a litigating position that is maybe contrary to a litigating position you took in a case I heard last week, do I have to ask? How in the weeds do we have to get into the Commission's internal processes about everything a lawyer says in this case? Not at all, Judge Larson, but those instances, as I stated, we couldn't do that because that would be contrary to an action of the Commission. That would be contrary to what the Commission has said. Simply seeking to take the record back to allow the full Commission to reconsider. You're saying we wouldn't do that, but what if you did? You're saying, well, we couldn't do that because it wouldn't be legal. I mean, they say what you did do was illegal. Right, and if that information was disclosed similar to how it was disclosed here, then certainly a petitioner could raise that claim and say this was ultra various. And, you know, I would say yes, in that circumstance. We cannot represent the dissenting. I mean, this gets at the SEC versus Chenery point. I think that rule of administrative law is mutually reinforcing with the Chairman's authority here. The agency's decision must be reviewed according to what the agency determined. Here, when the Chairman filed the motion for a remand to take something back, that wasn't asking the court to consider the prior orders not based on what the Commission said. As Petitioner's Council said, those orders are still in abeyance. Two things, if you could just address, and then we'll let you hear from the American Municipal Power. But what's your take on harmless air independently? So that assumes air, but what's your take on that? And then just a response on the internal stability canon, if you don't mind. What's our take on harmless air? In other words, let's assume it was air to unilaterally act in this way, that this is closer to confessing air than it is supplemental authority, right? There's the spectrum, and we're trying to figure out where this one is. But let's say it's air, it's ultra various. Can it be harmless? So that's point one. And then the other one goes to the internal stability canon. I understand. Yes, it definitely is harmless air because those 2020 orders remain final until the full commission by majority vote changes them. So just taking the record back doesn't do anything to those orders. They're still in abeyance. It doesn't vacate those orders, right? I'm sorry? It doesn't vacate those orders. It does not vacate those orders. If this court were to vacate the orders here on review, then there's a possibility that we'd be defending the 2020 orders in the D.C. Circuit. But that makes our point that what the chair, just by seeking remand. You're now arguing it. I wanted to stick with harmlessness if you don't mind. So I think that it is definitely harmless air. Okay. Now on the internal stability canon. Right. So I think that we did respond to regulatory stability in paragraph 104 of the 2022 order, J1053. But even if the court were to disagree with that, that is harmless air. The court under the APA 5 U.S.C. section 706 shall take account of the rule of prejudicial error. And the Supreme Court recently stated in its little sisters of the poor decision, 140 Supreme Court 2367, in site 2385, the rule of prejudicial error under the APA is a harmless error rule. It's harmless error for two reasons. First, under section 206 of the Federal Power Act, if the commission finds that the existing rate, so we're talking about the legacy demand curve, is not unjust and unreasonable, then, quote, FERC has no authority to impose a new rate. That comes from the D.C. Circuit's Amero main decision in site 25. There was no discretion here to consider regulatory stability if the commission found, as it did in the orders here on review, that the existing rate is not unjust and reasonable. And the second reason it's harmless error is because the regulatory stability considerations must be accounted for where there is a longstanding policy that has engendered serious reliance interest. The 2020 orders could not have engendered serious reliance interest. That was a destabilizing order. That was a destabilizing. And it couldn't have engendered serious reliance interest because it never went into effect. It was slated to go into effect in May of 2022. The commission issued its order on voluntary remand, changing those orders in December of 2021. And in any event, those orders were being litigated from the get-go. As soon as petitioners in that case, in the D.C. Circuit proceeding, could challenge the May 2020 order, they did. That was before the commission issued its November 2020 rehearing order. And in that kind of liminal space, there's always the possibility that the commission will reverse itself in the rehearing order because that's the procedure that Congress set up. So there was never any reasonable expectation of regulatory stability deriving from the 2020 orders. Okay. I think thank you so much. You probably are exhausted. I'm a little exhausted, but that was very helpful. Thank you very much. And is it Mr. Gray? He's got a few minutes here. If it pleases the court, my name is Jason Gray. I'm counsel to American Municipal Power, Inc., one of the joint interveners that is asking the court to deny the petitions for review. Unless the court has specific questions, with my time, I would like to address two issues. Can you put this big debate in a big picture context? What's underlying this? I can't figure out if this is all about solar wind and that's affecting the rate making. I'm trying to figure out at a very macro level why the fight. And that burden falls to me. That's a tough one. What I would say on that is the court need not get into the policy. I understand that's not what we do. But I'm just curious what's lurking behind all of this. What the record reflects are positions of commissioners on the one hand that believe the market design, and this is from the 2020 orders, the market design did not account for what's called biasing, which are essentially manual actions, independent actions that the operators took to change the load forecast. So to get more granular as we go from a long-term load forecast down to we actually need to take action today. They felt that biasing was not an efficient market mechanism because of the intermittency of certain resources. The other side of the argument was that those issues arise with respect to any type of generation, whether there's an outage, a cold stretch. It's not biasing itself that's the problem. In fact, biasing is not a problem. It's a tool that the market design uses. So I think that's the undercurrent on the policy debate. What we would submit is what FERC is charged with doing is establishing just and reasonable rates. And the key consideration here is that PJM submitted the proposed tariff revisions under Section 206 of the Federal Power Act. That's critically important because that's a different standard, a more stringent standard, than Section 205. PJM had to demonstrate that the existing $850 per megawatt hour reserve factor and the existing demand curve were unjust and unreasonable. And it had to present substantial evidence to make that demonstration. It could not simply demonstrate that an alternative was just and unreasonable, that the $2,000 megawatt proposal was somehow better. That's not what FERC considers under Section 206. FERC repeated over 20 times in the July 2021 and December, or excuse me, the remand orders, the two challenge orders here, that its findings were based on the fact that PJM did not carry its burden. PJM did not submit sufficient evidence to demonstrate that the existing market design, the penalty factors, and the demand curves were unjust and unreasonable. Turning from that burden of proof issue to the issue before the court is standard of review. This court has to determine whether those findings are rational. Did FERC actually back those findings up with something or were those conclusory summary statements? I submit that they were not. Every issue that petitioners have identified as FERC either ignoring or failing to meaningfully address, FERC has meaningfully addressed. It addressed the frequency of... You thought the internal stability canon they addressed? I think FERC may not be giving itself enough credit there. I think FERC did expressly address that argument. If you look at paragraph 103 of the rehearing order, FERC characterizes how that argument was raised. And it wasn't just regulatory stability. It was regulatory stability for badly needed changes that are broadly supported. And in paragraph 107 of that rehearing order, FERC took that argument up and it says, PJM was unable to garner sufficient stakeholder support to present its proposal under section 205. That fact does not support the assertion that the proposal is either broadly supported or badly needed. So I think you have to look at the regulatory stability argument in that context, that it wasn't just regulatory stability. It was regulatory stability based on an assertion that these provisions were badly needed to fix something that FERC found did not need to be fixed and were broadly supported. And the record does not support that, which is why PJM submitted the filing. Excuse me. Well, your red light's on. That's another answer to this. Just to close that point, which is why PJM submitted the filing under section 206, because it did not have broad support. Got it. Okay. I think, thank you for your helpful thing. And sorry to put that on you, but you did a good job with it. So thank you. Appreciate it. Thank you. We'll hear rebuttal. Thank you, Your Honor. I'll focus principally on the first, Ultravera's argument. Three points that I'd like to address. The confession of error issue and how we assess this. The second, whether this is a collateral attack. It's not. And third, what's the court to do about this in this circumstance? Because I think that's, of course, weighing on the court's mind. I think FERC's acknowledgment, ultimately, that the solicitor's office cannot confess error at the direction of the chair alone, is a pretty clear indication that the chair cannot unilaterally take action to expand the commission's power in a way that has the effect of obstructing what would otherwise be a final commission order. And I think that is ultimately the practical line that the court looks to as to when something is outside the chair's unilateral authority and that addresses the time extensions and things of that nature. It is when they are doing something that has a direct legal consequence that affects FERC's authority. Second, this is not a collateral attack on the D.C. Circuit's order. This is review of the underlying FERC decisions. And I think there's no doubt that FERC understands in its rehearing decision, and I quote this earlier at JA 1053, I mean, I hear what you're saying, I think, but we do have to acknowledge there's intervening orders of a sister circuit. Well, in what FERC says on remand here, this is after that intervening order, they say, quote, the commission filed its unopposed motion for voluntary remand of the record to allow for further consideration. Its rehearing position continues to rest on its conclusion that the remand request was done by FERC and not by the chair. So let's get to what's the remedy for the court to do. I do not think the court should say for what we think was a pretty egregious situation by the chair, the remedy is to do nothing and to sort of reward what we think was pretty egregious conduct through a finding of harmlessness. I'll say I think there are two different things the court could do. I think the more minimal thing would be to say this is merged in, in the basis I said, because after the D.C. Circuit remand order happened, FERC continues to justify what it's done based on saying that we the commission sought the remand, not the chair, when we know that that's factually inaccurate. I think that this court could simply identify that this is a foundational aspect of FERC's decision, and then it could vacate and remand that back. Now ‑‑ I'm sorry, but why isn't that just ratification of, like, it seems to me like maybe the chairman was an agent acting, or the chairman didn't have actual authority. D.C. Circuit said he had apparent authority, and then after the fact the principal ratified the actions of the agent. Why isn't that just the answer? Well, no, because I think what they're suggesting is there was authority at the time when we know there was not authority at the time because it was a different composition of individuals. That's what apparent authority means. It's not actual, but apparent. Right, but again, it was a different body. It's not a different body. We're the same court, even if one of us ‑‑ if I retire tomorrow and somebody sits in this chair, we're still the same court. We'll never be the same court. Well, let me add, even today from when this decision to one of your Honor's questions earlier, the composition of FERC is different today. So Chair Glick is no longer on the commission. So the question of, well, would they do the same thing, we don't know, because it's now a new composition of commissioners. And so part of this I'm not quite understanding. I understand why you want what you want. What I'm trying to figure out is why you're so opposed to what I'm more inclined towards. And what I'm more inclined towards is something that says it is harmless from our perspective, partly because there seems to be ratification. We're still identifying what we think was an error. If you feel the need to go to the D.C. Circuit and say they ought to consider, you know, they ought to look at this anew in light of what the Sixth Circuit said, you can do that. Why doesn't that ‑‑ it acknowledges the error, which is what you sought. We say from our perspective it appears to be harmless, appears. And you still can do something. And we're just being respectful of a sister circuit, which strikes me as a good idea. Well, we have this final FERC order on petition for review of this court. We're asking the court to vacate it. If this court in its decision does not vacate it, I think we'd have a collateral order issue coming the other direction, which is I think after this court, after our arguments, if it were to decline to vacate, I think it would be rather difficult to ask the D.C. Circuit for relief from this same order. That's where I think the appropriate course would be, and the more minimal course would be to vacate saying this is based on a view that this action was lawful, it's not lawful, what should happen from there. I suggested a more robust argument earlier, which was that it returns to the FERC decision pre‑remand request. What I'm suggesting is a more limited view that we would still find acceptable, which is the court vacates, and then the question of what happens following that vacater, to Judge Larson's question, do they just do the same thing thereafter, I think the court could leave that remedy question on remand for FERC to decide. I think we would probably still tell FERC at that point, no, you can't do this for this particular reason. FERC would address that or not, and if we think there is a basis for judicial review at that time, we could seek it from that order if that's appropriate. My point is just if the court finds the larger request I opened with in my opening argument of setting back to the pre‑remand period, I think the more straightforward way is a simple vacater for the commission in the first instance to determine what remedy is appropriate. What I don't think the court should do is say, we agree that this act was a statutory and unlawful act, but we are going to find it harmless in this context, and therefore leave us without any prospect of a remedy, and I don't think we would have an ability to go to the D.C. Circuit with that if this court declines, because that would be final at that point. I'd be happy to. Okay. Thank you so much. I'm a little angry with you that I now know what biasing means in this field. Like, why is that helpful to me in my life? But I'm very grateful there are people that do know these things, and you guys have been great with your briefs, arguments. Thanks for answering our questions. It's a very tricky case for us, so thank you very much. I appreciate it. Case will be submitted.